# EXHIBIT 1

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

In re

CUSTOMS AND TAX ADMINISTRATION OF THE KINGDOM OF DENMARK (SKATTEFORVALTNINGEN) TAX REFUND LITIGATION

MASTER DOCKET

18-md-2865 (LAK)

This document relates to: 1:18-cv-05374 / 1:18-cv-08655

THIRD PARTY COMPLAINT

DEL MAR ASSET MANAGEMENT SAVINGS AND RETIREMENT PLAN, FEDERATED LOGISTICS LLC 401K PLAN, and DAVID FREELOVE,

      Third-Party Plaintiffs

v.

ED&F MAN CAPITAL MARKETS LTD.,

      Third-Party Defendant

------------------------------------------------------------X

      Pursuant to Rule 14 of the Federal Rules of Civil Procedure, Defendants/Third-Party Plaintiffs Del Mar Asset Management Savings and Retirement Plan (the "Del Mar Plan") and Federated Logistics LLC 401K Plan (the "Federated Plan") (collectively, the "Plans") and David Freelove ("Freelove," and, with the Plans, the "Third-Party Plaintiffs") bring the following third-party claims against the Plans' broker-custodian, Third-Party Defendant ED&F Man Capital Markets Ltd. ("ED&F").

      Third-Party Plaintiffs are entitled to the withholding-tax refunds they claimed from Plaintiff Skatteforvaltningen ("SKAT") and that SKAT now wants returned in its actions against Third-Party Plaintiffs. If, however, Third-Party Plaintiffs are determined to be liable to SKAT, then ED&F – not Third-Party Plaintiffs – should be responsible for that liability because ED&F

1

(1) managed, controlled, and executed the Plans' Danish securities transactions, which are the

focus of SKAT's claims; (2) provided all of the information concerning the Plans' securities,

dividends, and withholding tax information on which Third-Party Plaintiffs relied; (3) collected

fees in connection with the Plans' securities transactions and withholding tax refunds; and (4)

subsequently alleged in a separate proceeding in the United Kingdom that the information in

twelve [12] tax vouchers issued by ED&F to the Plans were "inaccurate" because the pension

plan specified on such tax vouchers "had not 'received' the amount set out therein by way of

dividend from the Danish Listed Company; and had not 'suffered' [withholding tax] in the

amount set out therein in relation to such dividend at the stated (27%) or any rate."

## PARTIES

1.      Prior to being terminated, the Plans were U.S. pension plans.  Each plan was a

trust forming part of a pension plan, profit sharing, or stock bonus plan qualified under section

401(a) of the United States Internal Revenue Code, exempt from taxation under section 501(a) of

the United States Internal Revenue Code, and a resident of the United States of America for

purposes of U.S. taxation.

2.      Prior to termination, the Federated Plan was located at 599 Middlesex Road,

Darien, Connecticut, 06820.  Prior to termination, the Del Mar Plan was located at 711 Fifth

Avenue, New York, NY 10022.

3.      Freelove is a citizen of the United States and a resident of the State of Connecticut

and was one of the participants of the Del Mar Plan.  At all relevant times, Freelove served as

trustee for the Del Mar Plan.  At all relevant times, Freelove and his late wife, Tatjana Vanjak,

served as trustees for the Federated Plan.

4.     ED&F is a financial brokerage business and financial service provider headquartered at 3 London Bridge Street, London, SEI 9SG, United Kingdom.  At all relevant times, ED&F managed and controlled brokerage accounts for the Plans, executed trades in Danish securities for the Plans, provided documentation and information to the Plans in connection with the Plans' accounts and securities transactions, and collected fees in connection with the Plans' withholding-tax refund requests.

5.     ED&F and its affiliated companies advertise themselves as a global financial brokerage that provides specialized lending and financing services, clearing and settlement for equities and fixed income securities, and custodian services for exchange-traded and over-the-counter transactions, with offices in Asia, Europe, South America, and North America, including New York.  Throughout 2013 and 2014, ED&F solicited and sold to the Plans "customized equity finance solutions" whereby ED&F structured and facilitated the Plans' tax-favored acquisition of Danish dividends by finding a broker to execute the trades and structuring the financing of the Plans' Danish securities transactions.  Upon information and belief, ED&F targeted and provided similar services to other New York-based pension plans.

**JURISDICTION AND VENUE**

6.     This Court has subject-matter jurisdiction over these third-party claims pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 and because it is between U.S. citizens and citizens of a foreign state.  This Court also has subject-matter jurisdiction over these third-party claims pursuant to 28 U.S.C. § 1367 because the third-party claims form part of the same case or controversy as SKAT's claims.

7.     This Court has personal jurisdiction over ED&F because ED&F does business in New York including soliciting and executing contracts with the Del Mar Plan, which was a

3

resident of New York; has an affiliated company with an office in New York; and EDF's
conduct giving rise to these third-party claims was purposefully directed towards the Plans in the
State of New York and caused tortious injury in New York.

8.      Venue is proper in this Court pursuant to U.S.C. § 1391(b)(3) because ED&F is
subject to this court's personal jurisdiction with respect to this action.

## STATEMENT OF FACTS

**A.  ED&F entered into various agreements with the Plans pursuant to which ED&F
     agreed to exercise reasonable care in relation to the Plans' transactions and
     accounts.**

9.      ED&F is a broker registered with the Financial Conduct Authority ("FCA"),
which regulates the UK financial and securities markets.

10.     Upon information and belief, in 2013 and 2014, the Plans and ED&F executed
various agreements (the "Agreements") that established ED&F's contractual obligations as
broker-custodian for each of the Plans.[1] The Agreements include each Plans' Custody
Agreement, Security and Set-Off Deed, ISDA Master Agreement, and Terms and Condition of
Business, with variations thereto.

11.     Pursuant to the Agreements, the Plans have maintained separate brokerage
accounts with ED&F since at least April 2013.

12.     ED&F was required to exercise reasonable care when, among other things, (i)
buying or selling securities for the Plans; (ii) keeping records and statements concerning the
Plans' accounts and securities; (iii) acting on the Plans' instructions; (iv) registering the Plans'

---

[1] The Del Mar Plan was the sole limited partner of Hamlyn LP ("Hamlyn"), which is registered as a limited
partnership in Gibraltar.  Hamlyn opened the account at ED&F from which the investments in the Danish securities
that are the subject of SKAT's complaint were executed and entered into the agreements with ED&F to act as its
broker-custodian on behalf of the Del Mar Plan.

securities in compliance with FCA regulations; and (v) crediting all income, dividends, and other proceeds on the Plans' securities only after actual receipt and reconciliation.

13.     ED&F was prohibited from, among other things, falsifying account statements, buy/sell confirmations, dividend receipts, tax vouchers, or other documentation in relation to the Plans' securities holdings and brokerage accounts.

14.     The Plans designated Duet Asset Management Limited as their investment manager in connection with investments in U.S. and foreign securities transactions conducted through the Plans' ED&F brokerage accounts.

15.     ED&F agreed to communicate with the Plans through Duet and, during all relevant times, ED&F routinely communicated with the Plans through Duet in relation to ED&F's dealings with the Plans, which are described more fully below.

B.  **The Plans engaged ED&F in relation to Danish securities, received dividends net of withholding taxes on their holdings, and applied for withholding-tax refunds from SKAT based on the information provided by ED&F.**

16.     At all relevant times herein, Danish tax law required Danish companies to withhold and report to SKAT 27% of the dividends Danish companies distribute to their respective shareholders.

17.     Pursuant to the U.S.-Denmark Tax Treaty, Denmark cannot tax dividends paid to a U.S. pension plan by a Danish company.

18.     At all relevant times, SKAT served the Danish government as the agency responsible for administering Danish taxes and refunding dividend withholding taxes, including refunds of dividend withholding taxes owed to U.S. pension plans.

19. Between April 2013 and August 2014, the Plans engaged ED&F to buy and sell shares of certain Danish companies.

20. As a result, ED&F generated a number of documents detailing and describing each of the transactions, including buy/sell confirmations for the Plan's transactions, account statements showing that the transactions occurred, and tax vouchers describing the Plans' security holdings and related withholding-taxes (the "Tax Vouchers").

21. ED&F provided documents and information concerning the Plans' holdings, security interests, and withholding-taxes to the Plans through Duet.

22. According to the information and documents provided by ED&F, the Plans' holding of shares in Danish companies resulted in the crediting of dividends to the Plans' brokerage accounts.

23. On information and belief, including information provided by ED&F, the Plans held securities in Danish companies in their ED&F brokerage accounts on or around the relevant record dates for payment of dividends (the "Holdings") and received dividends net of withholding taxes on those securities (the "Dividends").

C. **Third-Party Plaintiffs relied on ED&F when the Plans applied for withholding-tax refunds from SKAT.**

24. Third-Party Plaintiffs entrusted ED&F, as custodian for the Plans, with the management and control of the Plans' brokerage accounts, the execution of securities transactions for the Plans, and the preparation of any Tax Vouchers related thereto.

25. ED&F prepared a Tax Voucher for each of the Plans' Holdings and Dividends.

26. The Plans, through Duet, received the Tax Vouchers from ED&F.

27.     With each of the Tax Vouchers, ED&F confirmed the Plans' relevant shareholdings over the applicable dividend dates, described the Dividends received by the Plans net of withholding taxes and stated that ED&F "has no beneficial interest in the holding and will not be reclaiming the tax. The dividends specified on this credit advice were paid net of withholding tax to [the Plan]." For example:



28.     Attached hereto are the relevant Tax Vouchers provided by ED&F for the Plans'

withholding-tax refunds, specifically, ten (10) Tax Vouchers for the Del Mar Plan (Exhibit A)

and six (6) Tax Vouchers for the Federated Plan (Exhibit B)

29.     At all relevant times, ED&F was uniquely positioned to confirm the status of the

Plans' Holdings, Dividends, brokerage accounts, securities transactions, and entitlement to

dividend withholding taxes.

30.     Third-Party Plaintiffs reasonably relied on ED&F to act primarily for the benefit

of the Plans and placed the Plans' property, interests, and trust in the charge of ED&F.

31.     On information and belief, ED&F was the only entity that had direct control over

the information concerning, among other things, the Plans' brokerage accounts, securities in

those accounts, receipt of dividends, and entitlement to dividend withholding taxes.

32.     After ED&F confirmed that the Plans received the Dividends net of withholding

taxes, Tax Vouchers were sent to Goal Taxback Ltd. ("Goal Taxback"), a third-party payment-

processing agent, who then submitted the applications for withholding-tax refunds to SKAT on

behalf of the Plans.

33.     Third-Party Plaintiffs reasonably relied on the Tax Vouchers and other

information provided by ED&F, including buy/sell confirmations and account statements, to

form the belief that (i) the Plans' Holdings and Dividends were accurate; (ii) the Plans actually

held the securities they represented to SKAT that they owned; (iii) the Plans received the

Dividends; (iv) dividend tax was withheld in relation to the Dividends and the Holdings; and (v)

the Plans were entitled to withholding-tax refunds from SKAT.

34.     ED&F provided each Plan with a general ledger reflecting all Danish securities

transactions in their ED&F brokerage accounts.  The general ledgers confirm that for each

transaction reflected on the Tax Vouchers, the Plans owned the relevant shares on their respective record dates and were paid the applicable dividends, minus Danish withholding taxes.

35.     Third-Party Plaintiffs reasonably relied on the Tax Vouchers and other information provided by ED&F, including buy/sell confirmations and account statements, when they requested the withholding-tax refunds from SKAT through Goal Taxback.

36.     SKAT paid the Plans through Goal Taxback for all of the Plans' withholding-tax refunds

37.     In 2018, SKAT sued Third-Party Plaintiffs seeking damages and/or restitution in the amount of the withholding-tax refunds SKAT paid to the Plans, alleging fraud, aiding and abetting fraud, negligent misrepresentation, unjust enrichment, and money had and received.

38.     The refunds SKAT seeks to have returned in its actions against the Third-Party Plaintiffs are as follows:

| Plan | Amount Claimed by SKAT |
|------|------------------------|
| The Del Mar Plan | $8,688,000 |
| The Federated Plan | $5,052,000 |
| **TOTAL** | $13,740,000 |

**D.  ED&F fraudulently issued twelve [12] Tax Vouchers to the Plans that were inaccurate and for which ED&F should be responsible for any amounts claimed by SKAT for withholding taxes refunded in reliance on such Tax Vouchers.**

39.     SKAT sued ED&F in the United Kingdom (the U.K. Proceeding") over the same transactions that are the basis of SKAT's claims against Third-Party Plaintiffs.

9

40.     In its amended defense filed in September 2019 in the U.K. Proceeding, ED&F identified 80 Tax Vouchers issued by ED&F to pension plans that they alleged were inaccurate because the pension plans specified on such tax vouchers "had not 'received' the amount set out therein by way of dividend from the Danish Listed Company; and had not 'suffered' [withholding tax] in the amount set out therein in relation to such dividend at the stated (27%) or any rate."

41.     Seven [7] of the alleged inaccurate Tax Vouchers in the amended defense had been issued to the Del Mar Plan and five [5] of the alleged inaccurate Tax Vouchers had been issued to the Federated Plan. The twelve [12] alleged inaccurate Tax Vouchers (the "Subject Tax Vouchers") that were issued to the Plans are as follows:

| Pension Plan | Danish Company | Ex-Date | Withheld Dividend Tax (DKK) | Amount of Overpayment Claimed by SKAT (DKK) |
|---|---|---|---|---|
| The Del Mar Plan | Coloplast A/S - B | 12/6/13 | 945,000 | 945,000 |
| The Del Mar Plan | Novozymes A/S - B | 2/27/14 | 5,298,750 | 5,298,750 |
| The Del Mar Plan | TDC A/S | 3/7/14 | 14,256,000 | 14,256,000 |
| The Del Mar Plan | Novo Nordisk A/S - B | 3/21/14 | 3,159,000 | 3,159,000 |
| The Federated Plan | Danske Bank A/S | 3/19/14 | 8,910,000 | 8,910,000 |
| The Federated Plan | Novo Nordisk A/S – B | 3/21/14 | 12,150,000 | 12,150,000 |
| The Del Mar Plan | Tryg A/S | 4/4/14 | 2,551,500 | 2,551,500 |
| The Del Mar Plan | A.P. Moller Maersk | 4/1/14 | 4,536,000 | 4,536,000 |
| The Federated Plan | Tryg A/S | 4/4/14 | 2,187,000 | 2,187,000 |
| The Del Mar Plan | A.P. Moller Maersk | 4/1/14 | 6,804,000 | 6,804,000 |
| The Del Mar Plan | Coloplast A/S - B | 5/9/14 | 3,240,000 | 3,240,000 |
| The Del Mar Plan | Coloplast A/S - B | 5/19/14 | 1,404,000 | 1,404,000 |

42.     Despite being in possession of information upon which it has subsequently determined that there were twelve [12] securities for which the Plans did not receive a dividend from the Danish listed company and did not suffer withholding tax at any rate, ED&F fraudulently issued the Subject Tax Vouchers reflecting that the Plans had received dividends

from the Danish listed company and had suffered withholding tax at a rate of 27% of such dividends.

43.     The Subject Tax Vouchers are identical in appearance, format and language to the other four Tax Vouchers issued to the Plans by ED&F that ED&F has not identified as being inaccurate.

44.     Third-Party Plaintiffs reasonably relied on all Tax Vouchers issued by ED&F including the Subject Tax Vouchers and other information provided by ED&F, including buy/sell confirmations and account statements, to form the belief that with respect to the securities reflected on the Tax Vouchers (i) the Plans' Holdings and Dividends were accurate; (ii) the Plans actually held the securities they represented to SKAT that they owned; (iii) the Plans received the Dividends; (iv) dividend tax was withheld in relation to the Dividends and the Holdings; and (v) the Plans were entitled to withholding-tax refunds from SKAT.

45.     Third-Party Plaintiffs reasonably relied on all Tax Vouchers issued by ED&F including the Subject Tax Vouchers and other information provided by ED&F, including buy/sell confirmations and account statements, when they requested the withholding-tax refunds from SKAT through Goal Taxback.

46.     At no time did ED&F inform the Plans or, upon information and belief, Duet or Goal Taxback that any of the Tax Vouchers issued to the Plans may have been inaccurate and thus should not be relied upon.

**E.  If SKAT proves the Plans did not own the shares they claimed to own, did not earn the dividends they claimed to have earned, or were otherwise not entitled to the withholding taxes they claimed, then ED&F should be responsible for any amounts claimed by SKAT.**

47.     SKAT alleges Third-Party Plaintiffs misrepresented the Plans' Holdings and Dividends when the Plans requested the withholding-tax refunds.

48.     SKAT alleges that each Plan did not own the shares that they claimed to own, did not earn the dividends they claimed to have earned, and was not entitled to the tax refunds that it claimed.

49.     SKAT also alleges that ED&F provided statements falsely representing that the Plans owned shares in Danish companies and had earned dividends on those shares.

50.     If SKAT establishes that Third-Party Plaintiffs are liable to SKAT to repay some or all of the withholding taxes that were refunded to the Plans or some or all of SKAT's alleged damages or amounts it claims to be owed, then ED&F should be responsible for such repaid withholding tax refunds and damages because of ED&F's obligations under the Agreements and because of its unique position by which it managed and controlled the Plans' brokerage accounts, executed securities transactions for the Plans, and confirmed the Plans' Holdings, Dividends, and withholding-tax refunds.

**F.   Alternatively, ED&F must repay the fees it collected in relation to the Plans' transactions and withholding-tax refunds if SKAT is entitled to damages or restitution.**

51.     Parties that facilitate securities transactions and related transactions typically charge fees. Fees are often charged as a percentage of the total profit or cost of the transaction. This is common in many service-oriented industries and is simply understood as the "cost of doing business."

52.     ED&F collected fees from the Plans in connection with the Plans' transactions, Holdings, Dividends, and/or withholding-tax refunds.  In its amended defense to the U.K.

Proceeding, ED&F admitted that it "received fees out of the proceeds of any successful [withholding tax] applications which included a Tax Voucher prepared by ED&F."

53.     If SKAT's allegations are proven to be true or if SKAT is otherwise entitled to reimbursement of some or all of the dividend withholding tax that SKAT refunded to the Plans, then ED&F should be required, at a minimum, to return any fees it collected from the Plans in connection with the Plans' transactions, Holdings, Dividends, and/or withholding-tax refunds.

### THIRD-PARTY CLAIM COUNT I
### Fraud – The Plans v ED&F

54.     The Plans repeat and reallege paragraphs 1 through 53 of these Third-Party Claims as if set forth fully herein.

55.     ED&F intentionally, knowingly and/or recklessly made or caused to be made the material, false and fraudulent statements set forth in the Subject Tax Vouchers described in paragraphs 41-46.

56.     ED&F intentionally, knowingly, and/or recklessly made or caused to be made these false and fraudulent statements to induce the Plans to continue to pay their fees in connection with these transactions.

57.     In reliance on the Subject Tax Vouchers, and without knowledge or reason to know of the falsity or fraudulent nature of the Subject Tax Vouchers, the Third-Party Plaintiffs requested withholding tax refunds from SKAT for the twelve securities that SKAT now wants returned in its actions against Third-Party Plaintiffs

58.     Thus, if SKAT is entitled to the amounts it claims to be owed with respect to the Subject Tax Vouchers, then ED&F should be liable to the Third-Party Plaintiffs for any amounts or other remedies the Third-Party Plaintiffs are found to owe SKAT, including, but not limited to, damages, restitution, punitive damages, and/or fees and costs, plus interest.

59. ED&F's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, entitling Third-Party Plaintiffs to punitive damages.

## THIRD-PARTY CLAIM COUNT II
### Negligence Misrepresentation

60. The Plans repeat and reallege paragraphs 1 through 59 of these Third-Party Claims as if set forth fully herein.

61. ED&F had a duty to provide truthful and accurate Tax Vouchers to the Plans.

62. ED&F made material misstatements on the Subject Tax Vouchers that were sent to the Plans. ED&F knew, or should have known, that the Subject Tax Vouchers were inaccurate.

63. ED&F intended the Plans would rely upon the Subject Tax Vouchers in requesting withholding tax refunds from SKAT for the twelve (12) securities from which ED&F's fees would be paid.

64. The Plans reasonably relied upon the Subject Tax Vouchers when requesting withholding tax refunds from SKAT for the twelve (12) securities that SKAT now wants returned in its actions against Third-Party Plaintiffs.

65. Thus, if SKAT is entitled to the amounts it claims to be owed with respect to the Subject Tax Vouchers, then ED&F should be liable to the Third-Party Plaintiffs for any amounts or other remedies the Third-Party Plaintiffs are found to owe SKAT, including, but not limited to, damages, restitution, punitive damages, and/or fees and costs, plus interest.

## THIRD-PARTY CLAIM COUNT III
### Breach of Contract – The Plans v ED&F

66. The Plans repeat and reallege paragraphs 1 through 65 of these Third-Party Claims as if set forth fully herein.

14

67.     The Agreements between the Plans and ED&F constitute binding and enforceable contracts.

68.     The Plans performed their obligations under the Agreements at all relevant times.

69.     ED&F's obligations required ED&F to exercise reasonable care when, among other things, (i) buying or selling securities for the Plans; (ii) keeping records and statements concerning the Plans' brokerage accounts and ownership of securities; (iii) acting on the Plans' instructions; (iv) registering the Plans' securities in compliance with all applicable rules and regulations; and (v) crediting all income, dividends, and other proceeds on the Plans' securities only after actual receipt and reconciliation.

70.     ED&F's obligations prohibited ED&F from, among other things, falsifying account statements, buy/sell confirmations, dividend receipts, tax vouchers, or other documentation in relation to the Plans' securities holdings and brokerage accounts.

71.     If the Subject Tax Vouchers are inaccurate as alleged by ED&F in their amended defense in the U.K. Proceeding or if SKAT's allegations are proven to be true or if SKAT is otherwise entitled to the amounts it claims to be owed, then ED&F breached the Agreements, and the Third-Party Plaintiffs will have been damaged, in an amount to be determined, as a direct result of ED&F's breaches of contract and ED&F should be liable to the Third-Party Plaintiffs for any amounts or other remedies the Plans are found to owe SKAT, including, but not limited to, damages, restitution, punitive damages, and/or fees and costs, plus interest.

### THIRD-PARTY CLAIM COUNT IV
### Breach of Fiduciary Duty – Third-Party Plaintiffs v. ED&F

72.     Third-Party Plaintiffs repeat and reallege paragraphs 1 through 71 of these Third-Party Claims as if set forth fully herein.

73.     ED&F, as custodian to the Plans, had a fiduciary relationship with Third-Party Plaintiffs.  Third-Party Plaintiffs placed their confidence in ED&F to act in good faith and primarily for the benefit of the Plans and placed the Plans' property, interests, and trust in the charge of ED&F.  ED&F was uniquely positioned to confirm the Plans' Holdings, Dividends, brokerage accounts, securities transactions, and entitlement to dividend withholding taxes.

74.     On information and belief, ED&F was the only entity that had direct control over information concerning, among other things, the Plans' brokerage accounts, securities transactions, receipt of dividends, and entitlement to dividend withholding taxes.

75.     Because of its fiduciary relationship with Third-Party Plaintiffs, ED&F was required to deal truthfully and primarily for the benefit of the Plans at all times, to exercise reasonable care, skill, and diligence, and to advise Third-Party Plaintiffs of all relevant facts and circumstances known to ED&F.

76.     ED&F's fiduciary duties are separate and distinct from its contractual obligations to the Plans under the Agreements.

77.     If the Subject Tax Vouchers are inaccurate as alleged by ED&F in their amended defense in the U.K. Proceeding or if SKAT's allegations are proven to be true or if SKAT is otherwise entitled to the amounts it claims to be owed, then ED&F breached its fiduciary obligations owed to Third-Party Plaintiffs, and Third-Party Plaintiffs will have been damaged, in an amount to be determined, as a direct result of ED&F's breaches.

78.     Thus, if the Subject Tax Vouchers are inaccurate as alleged by ED&F in their amended defense in the U.K. Proceeding or if SKAT's allegations are proven to be true or if SKAT is otherwise entitled to the amounts it claims to be owed, then ED&F should be liable to Third-Party Plaintiffs for any amounts or other remedies Third-Party Plaintiffs are found to owe

SKAT, including, but not limited to, damages, restitution, punitive damages, and/or fees and costs, plus interest.

### THIRD-PARTY CLAIM COUNT V
### Promissory Estoppel – Third-Party Plaintiffs v. ED&F

79.     Third-Party Plaintiffs repeat and reallege paragraphs 1 through 78 of these Third-Party Claims as if set forth fully herein.

80.     ED&F promised to exercise reasonable care when, among other things, (i) buying or selling securities for the Plans; (ii) keeping records and statements concerning the Plans' brokerage accounts and ownership of securities; (iii) acting on the Plans' instructions; (iv) registering the Plans' securities in compliance with all applicable rules and regulations; and (v) crediting all income, dividends, and other proceeds on the Plans' securities only after actual receipt and reconciliation.

81.     ED&F promised to create only truthful and accurate documents in relation to the Plans' account statements, buy/sell confirmations, dividend receipts, tax vouchers, or other documentation in relation to the Plans' securities holdings and brokerage accounts.

82.     ED&F should have reasonably expected — and, on information and belief, did reasonably expect — its promises to induce Third-Party Plaintiffs to rely on the Tax Vouchers and other information provided by ED&F, including buy/sell confirmations and account statements, to form the belief that (i) the Plans' Holdings and Dividends were, in fact, accurate and legitimate; (ii) the Plans actually held the securities they represented to SKAT that they owned; (iii) the Plans actually received the Dividends they claimed to have received; (iv) taxes were withheld in relation to the Dividends and Holdings; and (v) the Plans were entitled to the withholding-tax refunds.

83.     Third-Party Plaintiffs acted with prudence and in reasonable reliance on ED&F's promises when they authorized Goal Taxback to submit applications for the withholding-tax refunds from SKAT and refrained from seeking from any other party a tax voucher or other documentation to support the Plans' tax-withholding refund claims. On information and belief, ED&F knew that Third-Party Plaintiffs so relied on ED&F's promises.

84.     ED&F knew all important and material facts concerning its promises, the Holdings, the Dividends, and the withholding-tax refunds.

85.     If the Subject Tax Vouchers are inaccurate as alleged by ED&F in their amended defense in the U.K. Proceeding or if, as SKAT alleges, the Plans never held the shares they claimed to own, never received the dividends they claimed to have received, and/or are otherwise not entitled to the withholding-tax refunds, then ED&F failed to fulfill its promises, and Third-Party Plaintiffs will have been damaged, in an amount to be determined, as a result of ED&F's failure to fulfill its promises.

86.     Thus, if the Subject Tax Vouchers are inaccurate as alleged by ED&F in their amended defense in the U.K. Proceeding or if SKAT's allegations are proven to be true or if SKAT is otherwise entitled to the amounts it claims to be owed, then ED&F should be liable to Third-Party Plaintiffs for any amounts or other remedies Third-Party Plaintiffs are found to owe SKAT, including, but not limited to, damages, restitution, punitive damages, and/or fees and costs, plus interest.

### THIRD-PARTY CLAIM COUNT VI
### <u>Unjust Enrichment – Third-Party Plaintiffs v. ED&F</u>

87.     Third-Party Plaintiffs repeat and reallege paragraphs 1 through 86 of these Third-Party Claims as if set forth fully herein.

88.     ED&F collected fees from the Plans out of the proceeds of any successful withholding tax application which included a Tax Voucher prepared by ED&F.

89.     ED&F has alleged that the Subject Tax Vouchers are inaccurate in their amended defense in the U.K. Proceeding.

90.     SKAT has alleged that the Plans' transactions, Holdings, and Dividends reflected on all of the Plans' Tax Vouchers were falsified and that the Plans were not entitled to the withholding-tax refunds from SKAT.

91.     It would be unjust for ED&F to retain the fees it collected in connection with the Plans' transactions, Holdings, Dividends, and withholding-tax refunds if the Subject Tax Vouchers are inaccurate as alleged by ED&F in their amended defense in the U.K. Proceeding or if SKAT's allegations are proven to be true or if SKAT is otherwise entitled to reimbursement of some or all of the amounts that SKAT paid the Plans.

92.     On information and belief, ED&F knowingly possesses the fees it collected from the Plans.

93.     Thus, if the Subject Tax Vouchers are inaccurate as alleged by ED&F in their amended defense in the U.K. Proceeding or if SKAT's allegations are proven to be true or if SKAT is otherwise entitled to reimbursement of some or all of the amounts that SKAT paid the Plans, then ED&F will have been unjustly enriched in the amount of the fees it collected from the Plans, and ED&F should be liable to account and return the fees, plus interest.

### THIRD-PARTY CLAIM COUNT VII
### Equitable Indemnification – Third-Party Plaintiffs v. ED&F

94.     Third-Party Plaintiffs repeat and reallege paragraphs 1 through 93 of these Third-Party Claims as if set forth fully herein.

95.      If SKAT's allegations are proven to be true or if SKAT is otherwise entitled to the amounts it claims to be owed, then Third-Party Plaintiffs will be liable to SKAT or will be obligated to repay SKAT the entire amount of the withholding-tax refunds paid by SKAT to the Plans.

96.      However, as alleged herein, Third-Party Plaintiffs relied on ED&F and ED&F's own statements, and furthermore, SKAT has alleged that it was ED&F that provided the statements falsely representing that the Plans owned shares in Danish companies and had earned dividends on those shares.

97.      Thus, if SKAT's allegations are proven to be true or if SKAT is otherwise entitled to the amounts it claims to be owed, then ED&F should be obligated to indemnify Third-Party Plaintiffs for all costs they have incurred and may incur as a result of any of SKAT's claims, including, but not limited to, (i) any amounts owed by Third-Party Plaintiffs to SKAT or, in the alternative, any amounts ED&F received in connection with the Plans' transactions, Holdings, Dividends, and withholding-tax refunds, and (ii) any of the Third-Party Plaintiffs' attorneys' fees and costs, plus pre-judgment interest and other expenses arising out of or related to these third-party claims and SKAT's claims against the Third-Party Plaintiffs.

**THIRD-PARTY CLAIM COUNT VIII**
**Contribution – Third-Party Plaintiffs v. ED&F**

98.      Third-Party Plaintiffs repeat and reallege paragraphs 1 through 97 of these Third-Party Claims as if set forth fully herein.

99.      If SKAT's allegations are proven to be true or if SKAT is otherwise entitled to the amounts it claims to be owed, then Third-Party Plaintiffs will be liable to SKAT or will be obligated to repay SKAT the entire amount of the withholding-tax refunds paid by SKAT to the Plans.

100.     However, as alleged herein, Third-Party Plaintiffs relied on ED&F and ED&F's own statements, and furthermore, SKAT has alleged that it was ED&F that provided the statements falsely representing that the Plans owned shares in Danish companies and had earned dividends on those shares.

101.     Thus, if SKAT's allegations are proven to be true or if SKAT is otherwise entitled to the amounts it claims to be owed, then ED&F should be obligated to contribute to Third-Party Plaintiffs for all or a portion of the costs they have incurred and may incur as a result of any of SKAT's claims, including, but not limited to, (i) any amounts owed by Third-Party Plaintiffs to SKAT or, in the alternative, any amounts ED&F received in connection with the Plans' transactions, Holdings, Dividends, and withholding-tax refunds, and (ii) any of the Third-Party Plaintiffs' attorneys' fees and costs, plus pre-judgment interest and other expenses arising out of or related to these third-party claims and SKAT's claims against the Third-Party Plaintiffs.

## JURY DEMAND

Third-Party Plaintiffs demand a jury trial on all issues so triable.

## REQUEST FOR RELIEF

WHEREFORE, Third-Party Plaintiffs respectfully request that this Court enter judgment in their favor and against ED&F as follows:

I.     Enter judgment in favor of the Third-Party Plaintiffs against ED&F on the third-party claims against ED&F;

II.     In the event SKAT successfully proves its claims against Third-Party Plaintiffs, require ED&F to indemnify Third-Party Plaintiffs for all costs arising out of or related to SKAT's claims against the Third-Party Plaintiffs and these third-party

claims, including the Third-Party Plaintiffs' attorneys' fees and costs, plus

prejudgment interest, costs, and expenses;

III.  For Count I, award the Third-Party Plaintiffs punitive damages;

IV.  Award the Third-Party Plaintiffs their attorneys' fees and costs; and

V.  Grant such other preliminary, permanent, compensatory, or punitive relief

against ED&F and in favor of the Third-Party Plaintiffs as the Court deems just

and proper.

November 5, 2019                              Respectfully Submitted,

                                             Kostelanetz & Fink, LLP

                                             /S/ Bryan C. Skarlatos
                                             Bryan C. Skarlatos
                                             Kostelanetz & Fink, LLP
                                             7 World Trade Center, 34th Floor
                                             New York, New York 10007
                                             (212) 808-8100 (phone)
                                             (212) 808-8108 (fax)
                                             *Attorneys for Defendants / Third-Party Plaintiffs*